**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **JOHN DOE,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) Civ. No. 1:21-cv-2903-JRS-TAB |
| | ) |
| **The Trustees of Indiana University,** | ) |
| **Indiana University Bloomington, Lauren Robel,** | ) |
| **Kathy Adams Riester, and Libby Spotts.** | ) |
| | ) |
| *Defendants*. | ) |

### DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO SEEK LEAVE TO PROCEED UNDER A PSEUDONYM

### Introduction

Plaintiff seeks to proceed under a fictitious name, a practice that courts strongly disfavor and permit only in "exceptional circumstances." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). This is not such a circumstance. Plaintiff seeks permission to proceed under a pseudonym almost exclusively out of concern that revealing his name in this litigation "could further prevent him from proceeding with his future endeavors." Plaintiff does not provide evidence of specific injury that would arise if his name was made public beyond potential embarrassment and the assumption that he may experience diminished job prospects, concerns courts have found do not rise to the level of justifying anonymity.

This case concerns Plaintiff's suspension from Indiana University Bloomington for one year because Defendants determined that Plaintiff hosted a party in violation of the COVID restrictions then in effect. This is not like the sexual misconduct cases that require the kind of intimate details that courts have found justify proceeding anonymously.

Moreover, courts deny requests for anonymity where the credibility of both the plaintiff and defendants are at issue and where the reputations of individual defendants are on the line. Plaintiff has accused Provost and Executive Vice President Lauren Robel ("Robel"), Associate Vice Provost for Student Affairs/Executive Associate Dean of Students Kathy Adams Riester ("Adams Riester"), and Associate Dean of Students and Director of the Office of Student Conduct Libby Spotts ("Spotts"), in their **individual** capacities, of knowingly violating the Fourteenth Amendment. (Doc. 01 at ¶ 197.) "Basic fairness" requires that the Plaintiff stand behind his claims and stand on equal footing with the Defendants in having his credibility tested. *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996). For these reasons, Plaintiff's Motion must be denied.

## Facts

Despite the length of Plaintiff's 35-page Complaint, the core facts of this case are relatively straightforward.

Plaintiff was suspended for one year from continuing his education at Indiana University Bloomington because he hosted a party at his residence with approximately 100 attendees in violation of the COVID restrictions in effect at the time. (Doc. 01 at ¶¶ 3, 100-102, 115.) As of April 7, 2021, Monroe County (home to Indiana University) maintained COVID restrictions advising that gatherings at personal residences within Monroe County would continue to be limited to fifty (50) people. (*Id.* at ¶ 12.) Further, in response to the COVID pandemic, Indiana University required students matriculating to the campus for the 2020-2021 academic year to execute a Student Commitment Form, wherein students agreed to practice good personal hygiene, wear a face mask in public, **practice physical distancing and adhere to other guidelines and**

**requirements**. (*Id.* at ¶ 73.) (emphasis added) By returning "in-person" to Indiana University's campus for the 2020-2021 academic year, Plaintiff agreed to the Student Commitment Form. (*Id.*)

On or about April 23, 2021, Plaintiff and his roommates hosted a fraternity party at their off-campus residence. (*Id.* at ¶¶ 100-102.) Both the Bloomington Police Department and Indiana University Police Department responded to reports of a large party and noise complaint at Plaintiff's residence. (*Id.* at ¶ 105-108.) After the Indiana University Police Department responded to the complaint, Plaintiff and his roommates agreed to keep the noise down and end the party. (*Id.* at ¶ 111.) After learning of the event, Indiana University Bloomington investigated Plaintiff's actions and ultimately suspended Plaintiff for one year, concluding that Plaintiff's behavior was considered dangerous and disruptive to the university community and constituted a serious threat of harm to himself and others on campus. (*Id.* at ¶ 112.) Plaintiff now sues the Defendants on one count: the Trustees of Indiana University, Indiana University Bloomington (collectively, the "University"), but also Provost Robel, Vice Provost Adams Riester, and Associate Dean Spotts in their individual and official capacities, for violating Plaintiff's procedural due process rights under the Fourteenth Amendment. (*Id.* at p.27 [caption between ¶¶ 180 and 181].) This claim arises out of the University's disciplinary action and suspension after finding Plaintiff violated the University's Code of Conduct and COVID protocols by hosting a party at his residence on April 23, 2021. (*Id.* ¶¶ 192-196.) Plaintiff also makes claims against the individual Defendants specific to the disciplinary process. He alleges that Defendants Robel, Adams Riester, and Spotts "knew or had reason to know at the time of [Plaintiff's] proceeding that their actions violated the Fourteenth Amendment and the University's Code." (*Id.* ¶¶ 197-198.)

## Argument

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be

prosecuted in the name of the real party in interest." Rule 10(a) requires that pleadings contain the names of the parties. Fed. R. Civ. P. 10(a). The Rules "embod[y] the presumption, firmly rooted in American law, of openness in judicial proceedings." *Doe v. Merten*, 219 F.R.D. 387, 390 (E.D. Va. 2004) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 384–91, 386 n. 15 (1979)); "[C]oncealment of a party's name impedes public access to the facts of the case, which include the parties' identity." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004).

The Seventh Circuit has therefore "repeatedly voiced [its] disfavor of parties proceeding anonymously" and places the burden on the party seeking anonymity to "demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016) (citing *Blue Cross & Blue Shield*, 112 F.3d at 872; *City of Chicago*, 360 F.3d at 669); *see also* Charles Alan Wright & Arthur R. Miller, 5A Federal Practice & Procedure § 1321 (4th ed. 2018) ("[F]ederal courts generally have been rather rigorous in not allowing the plaintiff to commence an action anonymously or to proceed under a pseudonym.").

The test for determining whether the plaintiff may proceed by anonymous name is a balancing one. "The presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the plaintiff . . . exceeds the likely harm from concealment." *City of Chicago*, 360 F.3d at 669. Other circuits have adopted similar formulations of the balancing test. *See, e.g., Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (citing *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir. 1992); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). Against

the "strong presumption favoring identification of litigants," courts have articulated five non-exclusive factors that might favor granting a request for anonymity:

> (1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit brought under a pseudonym would be prejudiced.

*Ind. Black Expo, Inc.*, 923 F. Supp. 137, 140 (S.D. Ind. 1996) (quoting *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996)); *see also Noe v. Carlos*, No. 2:08 CV 227, 2008 WL 5070463, at *2-*3 (N.D. Ind. Nov. 26, 2008) (citing same factors).[1] When balancing these factors, it is clear that the strong presumption against proceeding anonymously outweighs the alleged harm to Plaintiff. Each factor is discussed in turn.

### I. Factor 1: Plaintiff is challenging both governmental and private action and by filing his claims has caused reputational harm to all Defendants

Defendants' significant reputational interests weigh against granting anonymity. It is true that when "a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong," in part because "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). Here, however, the Plaintiff not only sued Indiana University, but three of its employees in both their individual and official capacities. Such cases

---

[1] This Court has, at times, added a sixth factor: "the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system." *Doe v. City of Indianapolis, Ind.*, No. 1:12-CV-00062-TWP, 2012 WL 639537, at *1 (S.D. Ind. Feb. 27, 2012). Additional factors include "whether the interests of children are at stake, and whether there are less drastic means of protecting legitimate interests of either the party seeking anonymity or the opposing party." *Indiana Black Expo, Inc.*, 923 F. Supp. at 140 (internal citations and quotations omitted). None of these factors would change the analysis or outcome on this Motion.

are properly construed as involving both governmental and private action, and the Court must therefore assess the Defendants' reputational concerns in evaluating this factor. *See, e.g.*, *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-170, 2018 WL 5929647, at *4 (W.D. Va. Nov. 13, 2018). "[C]ourts have recognized, the mere filing of a civil lawsuit can have significant effects on a defendant" including reputational harm and harm to their ability to function professionally. *Ind. Black Expo, Inc.*, 923 F. Supp. at 141 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *accord*, *Frank*, 951 F.2d at 323–24; *Shakur*, 164 F.R.D. at 361 n. 1).

In *Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5929647, for example, plaintiff college student brought Title IX and due process claims against a state university and several of its employees following disciplinary hearings in which the plaintiff was expelled for, among other things, sexual assault and battery. *Id.* at *1. The defendant employees, who were sued in their individual and official capacities, were all involved in some manner in the investigation and hearings that resulted in the plaintiff's expulsion. *Id.* at *4. Although the plaintiff sought, and was ultimately granted, permission to proceed anonymously, the court found that the "governmental activity" factor weighed **against** granting anonymity. *Id.* The court rejected the plaintiff's argument that "because [the defendants] are government employees, there is much less concern [of reputational harm] than there would be with merely private individuals." *Id.* The plaintiff "plainly state[d] he is suing the individual defendants in both their official and individual capacities," detailing in his complaint alleged acts and omissions taken by the individuals during the disciplinary proceedings. *Id.* As such, plaintiff's allegations "cannot be read as solely contesting the University's disciplinary process itself but must also be read as challenging the specific actions of the persons involved in that process." *Id.*

Here, the Plaintiff's analysis of factor one is erroneous insofar as he fails to acknowledge the claims against the three individual defendants: Defendants Robel, Adams Riester, and Spotts. In his Brief, the Plaintiff couches his claims as purely against Indiana University's policies and procedures. (*See* Doc. 03 at 4-5). But in his Complaint, which he incorporates by reference, Plaintiff alleges specific actions by the individual defendants that form the basis for his claims. (*Id.* at 2.) Specifically, the Plaintiff alleges that:

- "Indiana University, as a public institution established by the State of Indiana, as well as the individual Defendants, as agents of the university and **individually**, have a duty to provide students with due process of law by and through any and all policies and procedures set forth by the University." (Doc. 01 at ¶ 194.) (emphasis added)

- "Plaintiff also seeks to hold the individual defendants liable in their '**individual capacity**' because the individual defendants knew or had reason to know at the time of Doe's proceeding that their actions violated the Fourteenth Amendment and the University's Code." (*Id.* at ¶ 197.) (emphasis added)

This is not a case seeking merely to halt enforcement of laws or policies; as in *Virginia Polytechnic Inst. & State University*, it is an action for prospective relief and purported damages arising out of the individual Defendants' alleged specific actions that caused Plaintiff harm.

The distinction is an important one because suits against individuals implicate their personal and professional reputations in much the same way the Plaintiff alleges he was harmed. "Many of the cases in which courts have allowed plaintiffs to proceed under fictitious names have involved claims that did not include direct and personal attacks upon the reputation and integrity of the defendants, and where personal credibility played little if any role in the issues in the case." *Ind. Black Expo, Inc.*, 923 F. Supp. at 142. Just as the Plaintiff has an interest "in his good name,

reputation, honor, and integrity," (Doc. 01 at ¶ 184), so do the Defendants. "Basic fairness requires that where a plaintiff makes such accusations publicly, he should stand behind those accusations, and the defendants should be able to defend themselves publicly." *Ind. Black Expo, Inc.*, 923 F. Supp. at 141; *see also Noe v. Carlos*, No. 2:08 CV 227, 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008) ("The defendants have no lesser interests in their reputations than plaintiff, yet [plaintiff] has shown no solicitude for their privacy, and they were not afforded an opportunity to seek to have their names withheld from the public.") (internal quotations and citations omitted); *Shakur*, 164 F.R.D. at 361 (finding that in accusing the defendant of brutally raping her, the plaintiff "made serious charges and has put her credibility in issue. Fairness requires that she be prepared to stand behind her charges publicly.").

All three individual defendants have suffered, or will suffer, reputational harm as a result of this suit. Each of these individuals have important roles in the University and it is critical they are able to maintain the confidence of both students and faculty members to effectively perform their job duties. Plaintiff's accusations of bias and willful misconduct may significantly undermine that confidence and ability. Because Plaintiff makes specific allegations against the three individual Defendants, all of whom face considerable reputational harm as a result of proceeding in this litigation, "basic fairness" necessitates that he proceed publicly.

Even if the Court were to determine that the allegations against the three individual Defendants is not enough to tip the scales in favor of Plaintiff proceeding publicly, the Court must consider that universities are also uniquely vulnerable to Plaintiff's allegations in a way that other governmental institutions might not be. Unlike traditional governmental entities, Indiana University does not rely solely on tax revenue; a portion of its revenue comes from tuition and donations, and in this way, it acts like a private university or other types of non-profit

organizations, both of which have been found to have significant reputational concerns. *See, e.g.*, *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 66–67 (D.D.C. 2019) (acknowledging reputational harm to the university in denying plaintiff anonymity); *Ind. Black Expo, Inc.*, 923 F. Supp. at 141 (recognizing that the shadow cast over a defendant like the Black Expo in that "public charges made in a civil lawsuit . . . could extend to prospective donors and sponsors, and to other persons or institutions invited to associate themselves publicly with the organization."). The University's ability to continue to raise donations and attract students very much depends on its reputation. The University also has countless invaluable partnerships and relationships with entities and alumni across the world that are crucial to the University's research and education missions. Accusations that Indiana University deliberately violated federal law or that it harbors animus towards certain students could cause these entities and individuals to rethink their association with and support of the university, or certainly to withhold support until the lawsuit is resolved. The fact that Indiana University is a state university does not alone justify granting anonymity. *Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999) (finding "the fact that [the Defendant] is a state university is insufficient to justify allowing Plaintiff to proceed anonymously," particularly "since this is not a traditional action challenging the validity of a law or similar governmental activity.").

The nature of Plaintiff's claims do not warrant allowing Plaintiff to proceed under a pseudonym, and this is further reinforced because the Defendants include individuals as well as an institution that will experience reputational harm. Thus, the first factor weighs strongly against the Plaintiff's motion to proceed anonymously.

## II. Factor 2: Plaintiff's due process claim does not require him to disclose information of the utmost intimacy

Plaintiff argues that his claims against the Defendants will require him to reveal facts that are "of a highly intimate and personal nature." (Doc. 03 at 5.) This is simply not the case here. Not all personal details disclosed during litigation "warrant[ ] abandoning the presumption of openness in judicial proceedings." *Merten*, 219 F.R.D. at 392. It is presumed that a plaintiff necessarily exposes himself by choosing to litigate in public court.[2] Additionally, the risk of embarrassment in revealing past acts is not enough to justify proceeding anonymously. *Coe v. Cty. of Cook*, 162 F.3d 491, 498 (7th Cir. 1998) (party's embarrassment of past "immoral or irresponsible" behavior insufficient basis for anonymity); *Doe v. Vill. of Deerfield*, 819 F.3d 372, 375, 377 (7th Cir. 2016) (affirming denial of motion to proceed anonymously despite plaintiff's argument that revealing prior arrest and prosecution "would embarrass him"); *Merten*, 219 F.R.D. at 392 ("risk that a plaintiff may suffer some embarrassment is not enough to allow him to proceed anonymously") (internal quotation omitted); *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005) ("The risk that a plaintiff may suffer some embarrassment is insufficient to permit anonymity.").

Claims that require disclosure of personal information of the utmost intimacy typically involve allegations of sexual assault, *Doe v. Columbia Univ. et al.*, 831 F.3d 46 (2d Cir. 2016), or other "intimate personal matters as birth control, abortion, homosexuality, or the welfare rights of illegitimate children or abandoned families." *Merten*, 219 F.R.D. at 392. But, the Seventh Circuit

---

[2] Unlike victims in criminal proceedings, a civil plaintiff "has not been caught up unwillingly in litigation in public courts but has instead **chosen** to initiate this action*." Ind. Black Expo, Inc.*, 923 F. Supp. at 141 (emphasis in the original); *see also Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (In ruling against anonymity, the court observed that "this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws.").

has made clear that not even all cases involving allegations of sexual misconduct should be given such status. *City of Chicago*, 360 F.3d at 669 (in denying a petition to proceed anonymously, observing "sexual harassment cases are not brought anonymously even when the facts are gamier than they are here").

Courts have repeatedly denied plaintiffs' requests to proceed anonymously in cases challenging disciplinary proceedings, many of which involved allegations of sexual misconduct. *See, e.g.*, *Doe v. Kentucky Cmty. & Tech. Coll. Sys.*, No. CV 20-6-DLB, 2020 WL 998809, at *3 (E.D. Ky. Mar. 2, 2020) (denying pseudonym motion for faculty member challenging sexual misconduct proceedings against him finding the litigation would not require him to disclose intimate information noting "[p]erhaps if Plaintiff had been accused of rape or an inappropriate relationship with a student, for example, the calculus would be different . . . ."); *Doe v. Liberty Univ.*, No. 6:19-CV-00007, 2019 WL 2518148, at *4 (W.D. Va. June 18, 2019) (denying pseudonym motion for student challenging disciplinary proceedings for professional misconduct involving competence and interpersonal skills despite plaintiff's privacy and mental health concerns); *Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-690-JD, 2018 WL 5801532, at *1 (D.N.H. Nov. 2, 2018) (denying pseudonym motion where plaintiff student challenging disciplinary proceedings for violating protective order obtained by his ex-girlfriend finding allegations that he committed criminal misconduct and was a threat to the Dartmouth community were not matters that are "highly sensitive and personal"); *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) (denying pseudonym motion for plaintiff student rape victim where facts of criminal case were publicly available and the plaintiff had testified in open court).

Of course, when claims require disclosure of sensitive information that should not be made public, the proper remedy is to seek a protective order for that specific information and to file specific evidence containing sensitive information under seal, an appropriately targeted approach that would preserve the public nature of the proceedings. *See, e.g.*, *Blue Cross & Blue Shield*, 112 F.3d at 872 ("Should [the plaintiff's] psychiatric records contain material that would be highly embarrassing to the average person yet somehow pertinent to this suit and so an appropriate part of the judicial record, the judge could require that this material be placed under seal."). Proceeding anonymously is reserved for the exceptional case where a targeted approach is not possible.

Here, Plaintiff argues that his due process claim requires him to disclose "information that is highly sensitive and controversial in the present climate, depending on individual views," based on Plaintiff's suspension due to violation of COVID restrictions. (Pl.'s Br. at 7.) It does not. The Plaintiff was suspended for violating Indiana University's and Monroe County's COVID restrictions. Plaintiff willingly undertook the actions that led to his suspension, including hosting a party with approximately 100 people throughout the course of the day, and should not be able to shield his identity because he now fears "society" will judge him for his actions. Allowing Plaintiff to proceed anonymously here would invite any student subject to an institution's disciplinary process for violating university policy to attempt to proceed anonymously simply because they do not want to make their conduct, or the facts and circumstances surrounding it, public, even when it does not implicate or involve the type of intimate facts or information necessary for a Court to consider such a request.

Even if this Court were to determine that Plaintiff's case involves intimate or sensitive information (and Defendants maintain that it does not), this Court and others have regularly found that sensitive information outside of that related to sexual or romantic interests do not justify

proceeding anonymously. In *Indiana Black Expo, Inc.*, for example, the Plaintiff sued his employer for sexual harassment, violation of the Americans with Disability Act, the negligent infliction of emotional harm, defamation, and invasion of privacy, among other things, all of which gravely implicated defendant's reputation. *Ind. Black Expo, Inc.*, 923 F. Supp. at 140. The claims required consideration of plaintiff's history of substance abuse, his mental health hospitalization, and his medical history more generally. *Id.* at 140-41. Reviewing this factor, the court acknowledged that his medical history and history of substance abuse "may be sensitive subjects" but "[the plaintiff] cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism." *Id.* at 142.

Plaintiff cites to a Southern District of New York opinion where the court allowed the plaintiff, a university student who was issued a one-semester suspension for COVID violations, to proceed under a pseudonym. *Doe v. New York University*, 2021 WL 1662532, at *10 (S.D.N.Y. Apr. 28, 2021). However, the Second Circuit has adopted slightly different factors to assess whether to allow a party to proceed through litigation under a pseudonym. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Further, and more importantly, the plaintiff in *Doe v. New York University* **did not** sue any New York University employees in their individual capacities. This distinction is crucial; the individual Defendants in the case at bar face the same reputational scrutiny that purportedly requires Plaintiff to proceed under a pseudonym.

At best, similar to *Indiana Black Expo*, *Inc.*, some of the facts related to Plaintiff's decision to host an event that contravened Indiana University's and Monroe County's COVID restrictions might subject him to "scorn and criticism," (and Defendants do not concede this would be the case)

but they are not the type of personal details that courts have determined should warrant a plaintiff's attempt to proceed anonymously. Factor two, therefore, weighs against allowing Plaintiff to proceed anonymously.

### III. Factor 3: Plaintiff would not be compelled to admit his intention to engage in illegal conduct, thereby risking criminal prosecution

The Plaintiff has not alleged, nor is there reason to believe, that by admitting facts in this case, he is at risk of criminal prosecution. Quite the opposite, Plaintiff's argument is essentially that he did nothing wrong. Where there is nothing in the Plaintiff's claims that would compel him "to admit his . . . intention to engage in illegal conduct," this factor is simply "not at issue in this case." *Doe v. Purdue Univ.*, 321 F.R.D. at 342.

### IV. Factor 4: Plaintiff would not risk suffering injury if identified

Plaintiff has also "failed to point to any specific injury" that would justify proceeding anonymously. *Haskell Indian Nations Univ.*, 266 F. Supp. 3d at 1289. Plaintiff claims that "even if he ultimately obtained a favorable verdict on his claims, his future academic and career prospects could be significantly affected, depending on the views of future employers and institutions." (Doc. 03 at 7.) Plaintiff speculates that this case might garner media attention and "that the nature of the internet today is such that any plaintiff is readily identifiable, and his information accessible, via a simple online search." (*Id.*) Yet Plaintiff fails to note that, at a minimum, the dozens of partygoers and Plaintiff's fraternity brothers already know about this event. (*Id.* at ¶ 100-102.) Not to mention, the Bloomington Police Department responded to Plaintiff's residence because of a noise complaint, yet Plaintiff, unconcerned with public perception, continued the party until Indiana University police showed up. (*Id.* at 108-109). Moreover, Plaintiff's fraternity received a cease and desist letter from Indiana University on February 22, 2021, after the school learned that Plaintiff and his brothers hosted a 150+ person event over the course of three days, in

contravention of the COVID regulations then in effect. (*Id.* at 79-83.)  Plaintiff further speculates that forcing him to proceed under his true name would result in "significant harm" to Plaintiff, including "physical, psychological, emotional, and reputational damages, and economic injuries and the loss of educational and career opportunities and future earnings.  (*Id.* at 8.)

But concerns based solely on "economic well-being and possible embarrassment or humiliation" are not grounds for proceeding under fictitious names. *Ind. Black Expo, Inc.*, 923 F. Supp. at 142; *see also Cty. of Cook*, 162 F.3d at 498 ("[E]mbarrassment . . . is not a compelling basis for a waiver of the general rule that parties to federal litigation must litigate under their real names"); *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) ("That a plaintiff may suffer embarrassment or economic harm is not enough."); *K.W. v. Holtzapple*, 299 F.R.D. 438, 441 (M.D. Pa. 2014) (quoting same).  Furthermore, the Plaintiff's showing on this factor must be beyond mere speculation, as one court put it, "a plaintiff must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Megless*, 654 F.3d at 408.[3]

In *Holtzapple*, for example, plaintiff college students filed suit stemming from a disciplinary action involving a search of their fraternity house that uncovered marijuana and small weapons. *Holtzapple*, 299 F.R.D. at 439.  The plaintiffs sought to proceed anonymously, claiming that accusations that they were in possession of contraband "will damage their standing with fellow students and professors and potentially interfere with future opportunities for higher education and employment." *Id.* at 439-40.  The plaintiffs also alleged that "news media outlets may discuss the

---

[3] Notably, Plaintiff has not claimed retaliation or any threats to his physical safety if his name is attached to this lawsuit.  "The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously." *City of Chicago*, 360 F.3d at 669; *Ind. Black Expo, Inc.*, 923 F. Supp. at 142; *Boggs v. United States*, 143 Fed. Cl. 508, 512 (2019) (rejecting Plaintiff ATF agents' speculative assertion that they would face "significant risk of harassment and other harm" if identified).  Plaintiff's failure to assert significant harm or a reasonable threat of significant harm that would outweigh the strong presumption that he should litigate under his true name is fatal to his Motion.

story, which will then live in perpetuity through web searches on the internet." *Id.* at 441. The court held that the harm plaintiffs identified was not the type of "serious harm" that would justify proceeding anonymously. *Id.*; *see also D.E. v. John Doe*, 834 F.3d 723, 724 (6th Cir. 2016) (denying anonymity to plaintiff who feared that "a public record revealing his name" and the fact that marijuana and drug paraphernalia were discovered in an unconstitutional border search "would subject him to negative scrutiny from prospective future employers").

Here, as an initial matter, it is not clear how, if Plaintiff is successful in his suit and is exonerated from the disciplinary actions taken against him, his reputation and employment prospects will be harmed by publicly disclosing this exoneration. To the extent he is already required to report such disciplinary proceedings in his future applications, a public exoneration would in fact help him. More importantly, the Plaintiff's largely speculative concern about his reputation and job prospects are exactly the type of generic concerns that courts have held are simply not enough "to overcome the strong presumption in favor of requiring parties to sue using their true names." *Ind. Black Expo, Inc.*, 923 F. Supp. at 140; *see also Doe v. Kentucky Cmty. & Tech. Coll. Sys.*, No. CV 20-6-DLB, 2020 WL 998809, at *3 (E.D. Ky. Mar. 2, 2020) ("[T]he potential for the Plaintiff to be ridiculed, embarrassed, or stigmatized as a result of a lawsuit, or to be scrutinized by future employers is not sufficient to require the use of pseudonyms."); *Doe v. Univ. of Rhode Island*, No. CIV.A. 93-0560B, 1993 WL 667341, at *2 (D.R.I. Dec. 28, 1993) ("That the plaintiff may suffer some embarrassment or economic harm is not enough" to justify proceeding anonymously.) (internal quotation and citation omitted)

Plaintiff might *prefer* to keep this case private from employers and educational institutions, but in filing this case, he decided to put his integrity and reputation in play in much the same way Defendants' integrity and reputation are in question as a result of this lawsuit. *See D.E.*, 834 F.3d

at 728  (Plaintiff "forfeited his ability to keep secret his actions at the international border [involving his possession of contraband] . . . when he sued United States Customs and Border Patrol agents.")  Again, "basic fairness" dictates that where reputational concerns are implicated on both sides of the case, the parties should proceed by their names.  This factor weighs against allowing the Plaintiff to proceed anonymously.[4]

## V. Factor 5: The Defendants will be prejudiced by Plaintiff proceeding anonymously

Defendants will be prejudiced if the Plaintiff proceeds anonymously due to reputational harm and impact in the litigation. First, as discussed in the analysis of the first factor, *see supra* pp. 5-10, the Defendants will be significantly prejudiced because the Defendants, including publicly named individuals, would face accusations in a public forum of serious and deliberate wrongdoing, while the Plaintiff would not have to face the same scrutiny, despite the fact that it was Plaintiff who chose to file this lawsuit.  "Basic fairness" demands that this incongruous outcome be avoided.

Second, the Defendants must be able to challenge the credibility of the Plaintiff. "Many of the cases in which courts have allowed plaintiffs to proceed under fictitious names have involved claims that did not include direct and personal attacks upon the reputation and integrity of the defendants, and where personal credibility played little if any role in the issues in the case." *Ind. Black Expo,* 923 F. Supp. at 142; *E.E.O.C. v. Spoa*, LLC, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding that during trial, the "grant of anonymity would implicitly influence the jury") Much like the facts of *Black Expo,* Plaintiff's and Defendants' "testimony is virtually certain to be at odds on material matters, so that their credibility will be directly at issue." *Ind. Black Expo,* 923

---

[4] Plaintiff also implies that he will suffer mental, emotional and psychological harm, "the exact damages he seeks to remedy in this action."  Again, it is hard to imagine how he will suffer additional harm from having his claims, if successful, vindicated publicly.

17

F. Supp. at 142. Proceeding anonymously could impair Defendants' ability to challenge the credibility of Plaintiff.

Third, the Defendants will be prejudiced at all phases of the litigation. The Defendants may need to gain discovery from third-party witnesses, including depositions and document requests. It is complicated at best for Defendants to obtain third-party discovery pertaining to the Plaintiff if his name is anonymous. Defendants will also be prejudiced by being forced to refer to the Plaintiff by pseudonym at a jury trial. Courts have recognized, for example, that jurors could construe the court's permission for the plaintiff to conceal his true identity "as a subliminal comment on the harm the alleged encounter . . . has caused the plaintiff." *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014); *see also*, *James v. Jacobson*, 6 F.3d at 240-41. Jurors could also interpret the fact that the Plaintiff, who remains anonymous, is more vulnerable and sympathetic than the Defendants who are individually named. The use of a pseudonym will have an unpredictable effect on a jury, which prejudices the Defendants. With alternative tools, like the use of protective orders, ordering redactions, and filings under seal, truly sensitive information can be protected in a targeted way without prejudicing Defendants. For these reasons, Factor 5 also supports denying Plaintiff's Motion.

## VI.   Additional Considerations

Plaintiff alleges denying his Motion will have "a potentially chilling effect on other similarly situated future litigants." (Doc. 03 at 9.) Plaintiff's case involves his own misconduct (of which at least some 100 of his fraternity brothers and/or partygoers are already aware) and does not involve any intimate details that would warrant allowing Plaintiff to proceed under a pseudonym. Setting aside the ample reasons supporting the denial of Plaintiff's Motion discussed *supra*, at its core this Motion should be denied because, if granted, it would give students

everywhere the freedom to proceed under a pseudonym whenever they sought to challenge *any* university action.

Moreover, Plaintiff argues that because he chose to omit the names of other individuals involved in the acts leading to Plaintiff's suspension, he should also be allowed not to use his name. But Plaintiff brought this action and elected not to disclose the identity of any other individuals. Plaintiff cannot now rely on those omissions to argue they support shielding Plaintiff's identity from the public. For the foregoing reasons, Plaintiff's Motion to Seek Leave to Proceed Under a Pseudonym should be denied.

## Conclusion

The Plaintiff chose to bring public charges of intentional misconduct against Defendant The Trustees of Indiana University and its employees because he believes his disciplinary proceedings and ultimate suspension were unfair.  Bringing a claim is his right.  But in doing so, he has impugned not only the reputation of Indiana University, but that of three of its employees, all of whom still serve the faculty, staff, and students of the university and the public in prominent leadership roles.  Courts have consistently held that where both parties face reputational harm from being publicly accused of misconduct, basic fairness requires that they both be known to the public. That is the strong presumption in all cases before this Court and the factors courts have identified as potential rebuttals to that presumption do not favor Plaintiff.  Because Plaintiff has failed to allege "exceptional circumstances" that justify his proceeding anonymously, the Plaintiff's Motion must be denied.


Respectfully submitted,

/s/ *Tracy Betz*
Tracy Betz, Atty. No. 24800-53
Kayla Moody-Grant, Atty. No.35801-49
Jeffrey W. Parker, Jr., Atty. No. 35742-49
TAFT STETTINIUS & HOLLISTER, LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
tbetz@taftlaw.com
kmoody-grant@taftlaw.com
jparker@taftlaw.com

*Attorney for The Trustees of Indiana University, Indiana University Bloomington, Lauren Robel, Kathy Adams Riester, and Libby Spotts*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2021, I electronically filed the foregoing document with the Clerk of the Court using the electronic court filing system, which will provide notification of such filing to all counsel of record.

/s/ *Tracy Betz*
Tracy Betz