UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02903-JRS-MJD |
| | ) | |
| TRUSTEES OF INDIANA UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

This matter is before the Court on Plaintiff's Motion to Seek Leave to Proceed Under a Pseudonym. [Dkt. 3.] For the reasons set forth below, the Court **DENIES** Plaintiff's motion.

## I.  Background

The following facts are taken from Plaintiff's Complaint.

Plaintiff began his studies at Indiana University Bloomington ("the University") in the Fall of 2018 with an anticipated graduation date of Spring 2023. [Dkt. 1 at 5.] At the time of the incident giving rise to this litigation, Plaintiff was a 21-year-old junior, was President of the Pi Lambda Phi fraternity, and lived in an off-campus fraternity house known as "the Den" with four of his fraternity brothers. [Dkt. 1 at 7.] Plaintiff "thrived academically" and, after interning "at a big four accounting firm," he was "offered a full-time employment position, which is contingent on [Plaintiff] receiving his degree in good academic standing and a background check." [Dkt. 1 at 7-8.]

Throughout 2020 and 2021, COVID-19 regulations and restrictions were imposed nationwide, and were often modified due to the rapidly evolving pandemic. The University, Monroe County, and the City of Bloomington all executed various regulations in response, including placing limits on the number of people allowed to gather at a time. When the University resumed in-person learning for the 2020-2021 schoolyear, it required students returning to campus to execute a Student Commitment Form, wherein "students agreed to practice good personal hygiene, wear a face mask in public, practice physical distancing and adhere to other guidelines and requirements." [Dkt. 1 at 12.] The sanctions for non-compliance, per the University's website, "included a hold on accounts, fines or fees and a temporary exclusion from on-campus class attendance and physical presence on campus with a required switch to all online classes." [Dkt. 1 at 12.]

As described by Plaintiff, the weekend of April 22-23 "is well known nationally as the biggest party weekend for Indiana University." [Dkt. 1 at 15.] It is undisputed that, on April 23, 2021, "Plaintiff and his roommates hosted a fraternity party at their off-campus residence." [Dkt. 16 at 3; Dkt. 1 at 1.] While Defendants assert that Plaintiff's party involved "approximately 100 attendees" in violation of the Monroe County COVID restrictions and the University's Student Commitment Form, [Dkt. 16 at 2], Plaintiff maintains that "[t]he outdoor social gathering did not exceed fifty (50) people at any given time and did not extend indoors," which "was within Monroe County Health Department's guidelines, as stated on April 7, 2021." [Dkt. 1 at 16.] He further argues that "it was unclear whether the City of Bloomington's former restrictions were still in effect." [Dkt. 1 at 16.] The Bloomington Police Department and, later, the Indiana University Police Department both responded to noise complaints at the gathering. [Dkt. 1 at 16; Dkt. 16 at 3.]

On April 27, 2021, upon learning of Plaintiff's alleged violation of COVID protocols, the University "investigated Plaintiff's actions and ultimately suspended Plaintiff for one year, concluding that Plaintiff's behavior was considered dangerous and disruptive to the university community and constituted a serious threat of harm to himself and others on campus." [Dkt. 16 at 3.] The University additionally relayed their findings to the Pi Lambda Phi fraternity headquarters, and Plaintiff was subsequently suspended from the organization indefinitely. [Dkt. 1 at 18-19.] Plaintiff's co-hosting roommates and fraternity brothers were not issued the same sanction; they were instead "banned from campus for the remainder of the Spring 2021 semester but were allowed to complete their coursework virtually and have no ongoing disciplinary sanctions affecting the Fall 2021 to Spring 2022 semester." [Dkt. 1 at 31.] Although Plaintiff was granted "a formal review by the hearing commission on the grounds that the summary suspension was inappropriate given the facts and circumstances and wholly disproportionate as compared to his three similarly situated co-hosting housemates," his appeal was unsuccessful. [Dkt. 1 at 22.]

On November 22, 2021, Plaintiff filed his Complaint as John Doe, alleging that Defendants violated his Fourteenth Amendment due process rights. [Dkt. 1.] He argues that,

> after receiving notice of an alleged violation of the Covid-19 regulations against Plaintiff, Indiana University wrongfully (i) failed to notify Plaintiff of the alleged violations; (ii) sanctioned him by summary suspension prior to providing formal notice; (iii) charged him with misconduct; (iv) presumed him guilty; (v) found him guilty and imposed a disproportionate sanction to three other students who co-hosted the social gathering; and (vi) did not provide him with any hearing or oversight to review the fairness of the sanctions.

[Dkt. 1 at 31-32.] Plaintiff contemporaneously filed a sealed Notice of Intention to Seek Leave to Proceed Under Pseudonym, [Dkt. 2], and the instant Motion to Proceed Under a Pseudonym, [Dkt. 3].

## II.  Applicable Standards

The "presumption in favor of open proceedings where the parties are identified" is both powerful and longstanding. *Doe v. Indiana Black Expo*, 923 F. Supp. 137, 139 (S.D. Ind. 1996); *see* Fed. R. Civ. P. 10 (requiring the caption of a complaint to "name all the parties"); *see also* Fed. R. Civ. P. 17 (requiring that all civil actions "be prosecuted in the name of the real party in interest"). As a result, "[t]he use of fictitious names is disfavored." *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997). The "unusual practice" of allowing a party to litigate under a pseudonym may be appropriate, however, "in exceptional cases where the party has a privacy right so substantial as to outweigh the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Indiana Black Expo*, 923 F. Supp. at 139 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)).

"The decision whether to allow a party to proceed pseudonymously is within the discretion of the court." *Doe v. Purdue Univ.*, 321 F.R.D. 339, 341 (N.D. Ind. 2017); *K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997). The court therefore "has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Blue Cross & Blue Shield United*, 112 F.3d at 872. To be sure, there is no "mechanical legal test" that dictates when a party may proceed anonymously, and courts "should carefully review all the circumstances of the given case." *Indiana Black Expo*, 923 F. Supp. at 140. When deciding whether to grant anonymity, courts consider a number of factors, including, but not limited to:

> (1) whether the plaintiff is challenging governmental activity or an individual's actions; (2) whether the plaintiff's action requires disclosure of information of the utmost intimacy; (3) whether the action requires disclosure of the plaintiff's intention to engage in illegal conduct; (4) whether identification would put the plaintiff at risk of suffering physical or mental injury; (5) whether the defendant would be prejudiced by allowing the plaintiff to proceed anonymously; and (6) the

4

public interest in guaranteeing open access to proceedings without denying litigants access to the justice system.

*Doe v. City of Indianapolis, Ind.*, 2012 WL 639537, at *1 (S.D. Ind. Feb. 27, 2012) (quoting *EW v. New York Blood Center*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)); *see also Indiana Black Expo*, 923 F. Supp. at 140 (quoting *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996)). Importantly, this list of factors is non-exhaustive. Anonymity may also be granted where the plaintiff is a minor, a victim of rape or torture, or otherwise "a likely target of retaliation by people who would learn [his] identity only from a judicial opinion or other court filing." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Although courts will consider a variety of factors, it is the movant who ultimately "bears the burden of proof to show that some combination of these factors outweighs the ordinary presumption of judicial openness, justifying the exercise of the Court's discretion." *Doe v. Cook County*, 2021 WL 2258313, at *3 (N.D. Ill. June 3, 2021).

### III.   Discussion

Plaintiff asks to proceed under a pseudonym "due to the nature of the allegations" in his Complaint and because he "is justifiably concerned about the potential irreparable harm that could further prevent him from proceeding with his future endeavors." [Dkt. 3 at 1.] Defendants object, arguing that this case does not present the kind of "exceptional circumstances" that justify anonymity. [Dkt. 16 at 1.]

To determine whether Plaintiff's case constitutes an exceptional circumstance in which pseudonym treatment is warranted, the Court will consider the following relevant factors: (A) whether Plaintiff is challenging governmental activity or an individual's actions; (B) whether Plaintiff's action requires disclosing information of the utmost intimacy; (C) whether Plaintiff's identification would place him at risk of suffering harm; (D) whether Defendants would be

prejudiced by Plaintiff's continued anonymity; (E) the public's interest in guaranteeing open access to proceeding; and (F) whether Plaintiff's identity has thus far been kept confidential.[1]

### A.  Whether Plaintiff is Challenging Governmental Activity or An Individual's Actions

First, the Court will consider whether Plaintiff "is challenging governmental activity or an individual's actions." *New York Blood Center*, 213 F.R.D. at 111. Generally, "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong," in part because "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *Id.* "Courts have analyzed this factor inconsistently, however, with some courts holding that a suit against a private individual favors granting a motion to proceed under a pseudonym and other courts holding the opposite." *Cook County*, 2021 WL 2258313, at *7. It is therefore important to remember that "[t]he public has a strong interest in knowing the accusations against its tax-funded entities as well as the identifies of the individuals making those accusations." *Id.*

Plaintiff brings his Complaint against the University, a public educational institution, and its Trustees. [Dkt. 1 at 5.] These Defendants are undisputedly governmental actors, which weighs in Plaintiff's favor under this first factor. However, as Defendants underscore, Plaintiff also names as Defendants "the Provost and Executive Vice President" of the University Lauren Robel

---

[1] At the outset, it is important to note that finding analogous cases with applicable reasoning for the instant motion is difficult. Many cases dealing with requests for pseudonymity in similar disciplinary contexts stem from allegations of some sort of sexual misconduct. The ongoing COVID-19 pandemic clearly presents novel circumstances and serious issues. But the nature of the action at hand, in which a student is challenging the disciplinary proceedings following a finding that he violated COVID protocols, is quite simply on a different level than, for example, a case in which a student is challenging disciplinary proceedings following allegations of sexual assault. That is to say that the analysis and reasoning for or against pseudonymity in sexual assault cases cannot be applied in a directly parallel manner to the case at hand.

("Robel"), "the Associate Vice Provost for Student Affairs/Executive Associate Dean of Students" Kathy Adams Riester ("Adams Riester"), and "the Associate Dean of Students and Director of the Office of Student Conduct" Libby Spotts ("Spotts"), in their individual and official capacities. [Dkt. 1 at 5-6, 29.] Therefore, Plaintiff's Complaint "cannot be read as solely contesting the University's disciplinary process itself, but must be read as also challenging the specific actions of the persons involved in that process." *Doe v. Virginia Polytechnic Institute & State University*, 2018 WL 5929647, at * 4 (W.D. Va. Nov. 13, 2018); *see Doe v. City Univ. of New York*, 2021 U.S. Dist. LEXIS 230479, at *11 (S.D.N.Y. Dec. 1, 2021) (stating that "this factor does not weigh in favor of allowing plaintiff to proceed anonymously" because the plaintiff brought suit against both a governmental body and individual defendants in their official and personal capacities). Because Plaintiff's claims directly accuse University employees of misconduct in their individual capacities, Defendants Robel, Adams Riester, and Spotts each have a significant interest in protecting their reputation from damaging allegations, more so than if Plaintiff was solely challenging governmental activity. "Basic fairness requires that where a plaintiff makes such accusations publicly, he should stand behind those accusations, and the defendants should be able to defend themselves publicly." *Indiana Black Expo*, 923 F. Supp. at 141-42. This requires Plaintiff to litigate under his real name.[2]

---

[2] In his reply brief, Plaintiff argues that his interests in proceeding anonymously are not negated by his suing state actors in their individual capacities. [Dkt. 24 at 4.] Plaintiff generally cites a few cases in support of this argument, each of which misses the mark. For example, *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019), includes no discussion of pseudonymity. In *Doe v. Purdue Univ.*, No. 19-cv-56, 2019 WL 3887165 (N.D. Ind. Aug. 19, 2019), the court did not analyze this governmental factor with regard to the individual status of the university employees. In *Doe v. Purdue Univ.*, No. 18-cv-89, 2019 WL 1369348 (N.D. Ind. Mar. 25, 2019), the court notes that "Plaintiffs filed a motion to proceed pseudonymously, which is pending before the Court but has not been fully briefed; for purposes of this Opinion and Order, Plaintiffs will be referred to by the pseudonyms used in the Complaint." *Id.* at *1, n.1. In the Order on the plaintiff's motion to proceed under a pseudonym—not cited to by Plaintiff—the court specified

Accordingly, because Plaintiff is suing both governmental entities and individual actors, the first factor weighs NEUTRALLY with regard to Plaintiff's request for pseudonymity.

**B. Whether Plaintiff's Action Requires Disclosure of Information of the Utmost Intimacy**

Second, the Court will consider whether Plaintiff's "action requires disclosure of information of the utmost intimacy." *New York Blood Center*, 213 F.R.D. at 111. "[T]he types of personal intimate information justifying anonymity for litigating parties have typically involved such intimate personal matters as birth control, abortion, homosexuality, or the welfare rights of illegitimate children or abandoned families," *Doe v. Merten*, 219 F.R.D. 387, 392 (E.D. Va. 2004), as well as allegations concerning sexual relationships and sexual assault, *Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind. 2017), and religious beliefs, *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

Here, Plaintiff argues that pseudonymity is appropriate because "he would be required to disclose information that is highly sensitive and controversial in the present climate, depending

---

that the governmental activity factor weighed in favor of the plaintiffs only because "Defendants do not dispute that Plaintiffs are challenging governmental activity." *Doe v. Purdue Univ.*, No. 4:18-cv-89, 2019 WL 1757899, at *2 (N.D. Ind. Apr. 18, 2019). Similarly, in *Doe v. Purdue Univ.*, 321 F.R.D. 339 (N.D. Ind. 2017), the court stated that this factor weighed in favor of the plaintiff again because "Defendants [did] not address this element." *Id.* at 341. As such, Plaintiff's reliance on these cases is misplaced because there is no discussion regarding individual actors under this first factor. Plaintiff also notes that "this Honorable Court, in *Doe v. Indiana Univ.*, [No.] 20-cv-123, 496 F. Supp. 3d 1210 (S.D. Ind. 2020), granted a Plaintiff's motion to proceed pseudonymously in a matter wherein two of the same state actors named herein were defendants." [Dkt. 24 at 4.] However, there is no discussion of pseudonymity in that Order. In the Order on the plaintiff's motion to proceed under a pseudonym—not cited to by Plaintiff—the Court acknowledged the relevancy of the individual defendants but, after weighing all relevant factors, determined that anonymity was appropriate. *See* Order on Plaintiff's Motion to Proceed by Pseudonym at 3, Doe v. Indiana University, No. 1:20-cv-00123-JRS-DML (S.D. Ind. Mar. 3, 2020). It is important to remember that the test for whether anonymity is warranted requires a balancing of factors; no one circumstance is dispositive.

on individual views," namely that he, "a fraternity member, is accused of violating COVID

restrictions." [Dkt. 3 at 5.] He continues:

> COVID is an extremely volatile issue in today's society with differing opinions as
> to the need for continued regulations. Every individual, institution, State and
> political party has differing views on the handling of COVID. Given the sensitive
> and novel nature of the subject matter, the need for anonymity and protection seems
> clear. Exposing Plaintiff to such societal differences and potential prejudices
> justifies the need to proceed anonymously, particularly given the constantly
> changing laws and CDC recommendations as discussed in more detail in the
> Complaint.

[Dkt. 3 at 6.] However, Plaintiff presents no concrete examples of the type of intimate

information that revealing his identity would force him to disclose. This is especially clear given

that Plaintiff does not dispute that he "and his four housemates, also members of his fraternity,

hosted a social gathering in their private off-campus residence" on April 23, 2021, to which the

Bloomington Police Department and Indiana University Police Department responded. [Dkt. 1 at

16.] Indeed, it appears that Plaintiff would simply prefer not to attach his name to his admitted

conduct.

> No doubt lots of parties would prefer to keep their disputes private. For example, a
> plaintiff alleging he was discriminated against by his employer when his
> employment was terminated will have to disclose the employer's reason for
> terminating the plaintiff's employment—a reason that the plaintiff disputes is the
> real reason and which is often embarrassing or even damaging to his or her
> reputation. But there is no suggestion that such a plaintiff may proceed under a
> pseudonym to protect his or her reputation.

*Doe v. Milwaukee County*, No. 18-cv-503, 2018 WL 3458985, at *1 (E.D. Wis. July 18, 2018).

Moreover, "should a need for confidentiality arise in this case, there are alternative methods to

protect the confidentiality of the plaintiff's information," such as redacting sensitive information

or seeking a protective order. *City Univ. of New York*, 2021 U.S. Dist. LEXIS 230479, at *14-15.

Accordingly, because Plaintiff has not established that his action would require him to reveal information of the utmost intimacy, the second factor weighs AGAINST a grant of pseudonymity.

### C. Whether Plaintiff's Identification Would Put Him at Risk of Suffering Physical or Mental Injury

Third, the Court will consider whether "identification would put the plaintiff at risk of suffering physical or mental injury." *New York Blood Center*, 213 F.R.D. at 111. "In this regard, to justify the exceptional relief of proceeding anonymously, plaintiff must establish with sufficient specificity the incremental injury that would result from disclosure of [his] identity." *Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021).

Here, Plaintiff argues that, "[i]f the Court requires Plaintiff to reveal his identity, even if he ultimately obtains a favorable verdict on his claims, his future academic and career prospects could be significantly affected, depending on the views of future employers and institutions." [Dkt. 3 at 7.] Specifically, Plaintiff asserts that he will suffer harm in the form of "emotional and reputational damages, economic injuries, the loss of educational and career opportunities and future earnings," [Dkt. 3 at 8], and points to "the loss of employment by a big four accounting firm . . . and the loss of membership in a national fraternity," [Dkt. 24 at 2].

Ultimately, "Plaintiff's concerns in this case are centered upon his economic well-being and possible embarrassment or humiliation, but courts have generally rejected attempts to proceed under fictitious names based solely on such concerns." *Indiana Black Expo*, 923 F. Supp. at 142; *see Shakur*, 164 F.R.D. at 362 (prospective "claims of public humiliation and embarrassment, however, are not sufficient grounds for allowing a plaintiff in a civil suit to proceed anonymously"); *see also Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998) ("the embarrassment felt by a person who [allegedly] engages in immoral or irresponsible conduct is

not a compelling basis for a waiver of the general rule that parties to federal litigation must litigate under their real names"); *see also In re Boeing 737 MAX Pilots Litig.*, 2020 WL 247404, at *3 (N.D. Ill. Jan. 16, 2020) ("The worst-case scenario for the Plaintiffs is losing their jobs. That is no small thing, but transparency is no small thing either. At most, Plaintiffs allege a potential for economic harm, but 'a threat of economic harm alone does not generally permit a court to let litigants proceed[] under pseudonym.'") (quoting *Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005)). A movant must show that his "specific circumstances demonstrate a risk of serious social stigmatization surpassing a general fear of embarrassment" for a court to consider such harms when deciding whether the movant should proceed anonymously. *Cook County*, 2021 WL 2258313, at *5. Plaintiff has not done so here.

Plaintiff additionally elaborates that his violation of COVID restrictions could "subject him to retaliation by students, student groups, and university administrators who are in favor of more restrictive regulations." [Dkt. 24 at 6.] It is true that "[t]he danger of retaliation is often a compelling ground for allowing a party to litigate anonymously." *City of Chicago*, 360 F.3d 667 at 669. However, "[a] mere potential for retaliation, without more, is not enough to justify an extraordinary departure from public norms." *In re Boeing 737 MAX Pilots Litig.*, 2020 WL 247404, at *3. "To demonstrate retaliatory harm, plaintiffs must generally provide 'evidence that psychological damage or violent threats are anticipated if a party's identify is disclosed.'" *Cook County*, 2021 WL 2258313, at *4 (quoting *J.W. v. D.C.*, 318 F.R.D. 196, 200 (D.D.C. 2016)). There is no such evidence here. Further, it is worth noting once more that Plaintiff does not dispute that he hosted the April 23, 2021, party; he is suing on the grounds that the University's

subsequent proceedings deprived him of due process. As such, Plaintiff's arguments arising from COVID-based stigma are somewhat misplaced.[3]

That said, another relevant factor is "whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Purdue Univ.*, 321 F.R.D. at 342. Here, if Plaintiff is successful in proving that Defendants' procedures violated his due process rights, there is a chance that "the revelation of the Plaintiff's identity [in the course of this lawsuit] 'would further exacerbate the emotional and reputational injuries he alleges.'" *Id.* (quoting *Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016)). However, both the *Purdue Univ.* and *Colgate Univ.* cases dealt with sexual assault allegations, and the courts were concerned with the possibility of a college student being "marked for life as a sexual predator." *Colgate Univ.*, 2016 WL 1448829, at *3. The same depth of concern is not necessarily present here; a student reprimanded for breaking COVID-19 protocols will not wear the same scarlet letter as a student reprimanded for sexual violence against another student. Ultimately, the potential harm identified by Plaintiff "pales in comparison to the types of harms that typically receive protection." *In re Boeing 737 MAX Pilots Litig.*, 2020 WL 247404, at *3. While Plaintiff's desire to proceed under a pseudonym is understandable, his reasons "are not sufficient to overcome the strong presumption in favor of requiring parties to sue using their true names." *Indiana Black Expo*, 923 F. Supp. at 142.

---

[3] Plaintiff directs the Court to *Doe v. New York University*, No. 21-cv-2199, 2021 WL 1662532 (S.D.N.Y. Apr. 28, 2021), in which the court allowed a student challenging her suspension for violating COVID restrictions to proceed under a pseudonym because revealing her identity could "expose her to potential online retaliation for what some might characterize as reckless or selfish conduct" and "could impede her progress" toward her career goals. *Id.* at *10. While this case is the most analogous to the instant matter, the court's discussion of pseudonymity was brief and is neither persuasive nor binding here.

Accordingly, because Plaintiff has not provided sufficient evidence of concrete harms he will suffer if made to litigate under his real name, the third factor weighs AGAINST a grant of pseudonymity.

### D. Whether Defendants Would be Prejudiced by Allowing Plaintiff to Proceed Anonymously

Fourth, the Court will consider whether Defendants "would be prejudiced by allowing the plaintiff to proceed anonymously." *New York Blood Center*, 213 F.R.D. at 111. Under this factor, "courts look at the damage to a defendant's reputation caused by the anonymous proceeding, the difficulties in discovery, as well as the fundamental fairness of proceeding in this manner." *Id.* at 112.

Plaintiff argues that, because "Defendants are already aware of Plaintiff's true identity," they will "not be prejudiced in any way by the use of a pseudonym." [Dkt. 3 at 8.] However, that is not necessarily true. Defendants argue that they "will be prejudiced at all phases of the litigation" if Plaintiff is allowed to proceed under a pseudonym. [Dkt. 16 at 18.] Defendants elaborate:

> The Defendants may need to gain discovery from third-party witnesses, including depositions and document requests. It is complicated at best for Defendants to obtain third-party discovery pertaining to the Plaintiff if his name is anonymous. Defendants will also be prejudiced by being forced to refer to the Plaintiff by pseudonym at a jury trial. Courts have recognized, for example, that jurors could construe the court's permission for the plaintiff to conceal his true identity "as a subliminal comment on the harm the alleged encounter . . . has caused the plaintiff." *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014); *see also*, *James v. Jacobson*, 6 F.3d [233], 240-41 [(4th Cir. 1993)]. Jurors could also interpret the fact that the Plaintiff, who remains anonymous, is more vulnerable and sympathetic than the Defendants who are individually named. The use of a pseudonym will have an unpredictable effect on a jury, which prejudices the Defendants.

[Dkt. 16 at 18.] These are valid concerns which, ultimately, are not outweighed by Plaintiff's asserted privacy rights.

13

Accordingly, because Defendants may be prejudiced by Plaintiff's anonymity, the fourth factor weighs AGAINST a grant of pseudonymity.

**E.  The Public Interest in Guaranteeing Open Access to Proceedings**

Fifth, the Court will consider "the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system." *New York Blood Center*, 213 F.R.D. at 111. "Indeed, 'lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties.'" *Shakur*, 164 F.R.D. at 361 (quoting *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)).

Plaintiff argues that "the public's interest in this matter would not be furthered by disclosing Plaintiff's identity." [Dkt. 3 at 9.] Critically, though, the disclosure of a plaintiff's identity is the standard which the public is entitled to; pseudonymity is only acceptable in "exceptional circumstances." *Blue Cross & Blue Shield United*, 112 F.3d at 872. As such, the public's interest in the longstanding notion of openness of federal proceedings would be hampered by allowing Plaintiff to use a fictitious name—especially here, where Plaintiff has failed to establish how his case constitutes an exceptional circumstance warranting anonymity.

Accordingly, because the public is entitled to openness in judicial proceedings, the fifth factor weighs AGAINST a grant of pseudonymity.

**F.  Whether Plaintiff's Identity Has Been Kept Confidential Thus Far**

Finally, the Court will consider whether Plaintiff's "identity has thus far been kept confidential." *Purdue Univ.*, 321 F.R.D. at 341. The parties do not address this factor, but there is important insight within the briefs.

First, Plaintiff's Complaint does not hide the fact that he was elected President of the Pi Lambda Phi fraternity for the 2020-2021 schoolyear. [Dkt. 1 at 7.] A quick Google search

utilizing this information reveals Plaintiff's identity, illustrating how even Plaintiff has not fully attempted to keep his identity confidential when initiating this lawsuit. Plaintiff additionally points out that the University publicly disseminated information regarding his disciplinary action to his fraternity headquarters. [Dkt. 1 at 32.] Along the same lines, his underlying conduct— hosting a party that allegedly violated COVID restrictions—was not confidential, as there were admittedly at least 40-50 people present at Plaintiff's April 23, 2021, party.

Accordingly, because Plaintiff's identity has not been kept entirely confidential thus far, the sixth factor weighs AGAINST a grant of pseudonymity.

### IV.   Conclusion

In sum, Plaintiff has not established "a privacy right so substantial as to outweigh the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Indiana Black Expo*, 923 F. Supp. at 139 (quoting *Frank*, 951 F.2d at 323). Plaintiff, as the movant, has failed to meet his burden of "show[ing] that some combination of these factors outweighs the ordinary presumption of judicial openness, justifying the exercise of the Court's discretion." *Cook County*, 2021 WL 2258313, at *3. As a result, this case does not present the type of "exceptional circumstances" which warrant permitting Plaintiff to proceed under a pseudonym. *Blue Cross & Blue Shield United*, 112 F.3d at 872. Plaintiff "must step into the light and sue in the open, or not at all." *In re Boeing 737 Max Pilots Litig.*, 2020 WL 247404, at *4.

Accordingly, for the reasons set forth above, Plaintiff's Motion to Proceed Under a Pseudonym, [Dkt. 3], is **DENIED**. Plaintiff shall file an Amended Complaint that includes his name as required by Federal Rule of Civil Procedure 10(a) **within 14 days of the date of this Order**. **Defendants need not respond to Plaintiff's initial Complaint, but rather shall**

**respond to the Amended Complaint within 7 days of the date it is filed**. All filings

subsequent to the Amended Complaint shall use Plaintiff's name.

SO ORDERED.

Dated:  3 JAN 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.

16