UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ZACHARY BINOWITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-2903-JRS-MJD |
| | ) | |
| THE TRUSTEES OF INDIANA UNIVERSITY, | ) | |
| INDIANA UNIVERSITY BLOOMINGTON, | ) | |
| LAUREN ROBEL, KATHY ADAMS RIESTER, | ) | |
| and LIBBY SPOTTS | ) | |
| | ) | |
| Defendants. | ) | |

---

DEFENDANTS' BRIEF IN
SUPPORT OF THEIR MOTION TO DISMISS

---

In the spring of 2021, Zachary Binowitz ("Plaintiff") held a party at his off-campus residence, in violation of Defendants The Trustees of Indiana University's and Indiana University Bloomington's (collectively, the "University"), the City of Bloomington's, and Monroe County's COVID-19 protocols in effect at the time. The University summarily suspended Plaintiff on safety grounds, and later scheduled a hearing, thereby affording Plaintiff the opportunity to respond.

At that hearing, Plaintiff was able to present evidence and call witnesses, make a statement, and answer questions posed by the three-member hearing panel. After Plaintiff argued his case, the panel found that Plaintiff violated the University's Student Code of Student Rights, Responsibilities, and Conduct (the "Code"), and upheld the suspension. On appeal, then-Provost Lauren Robel ("Robel") concluded that the conduct on which the suspension was based was more likely than not to have occurred and upheld the suspension.

Plaintiff asserts one count that fails on the law. Plaintiff's Count I alleges that all five Defendants violated the Fourteenth Amendment of the Constitution, but Plaintiff has no cognizable liberty or property interest that Defendants *could have* taken without due process. Even if he did, Plaintiff admits that the University gave him notice of the charges and an opportunity to be heard, to call witnesses if he so chose, to attempt to explain the circumstances behind his violation of University and local city and county COVID-19 protocols, and to appeal that determination to Robel, which is another layer of process Plaintiff availed himself of. No allegation plausibly suggests that the hearing was a "sham."

Plaintiff's entire Amended Complaint fails for these overarching reasons (§ I below). But even if it did not, Plaintiff lacks standing to make many of his injunctive requests (§ II below), and he has not adequately pleaded a claim against the individual defendants (§ III below). Beyond that, his claims are barred by several layers of legal immunity (§ IV below).

Plaintiff chose to return to campus after acknowledging he would abide by COVID-19 protocols enacted by the University and local government. He then chose to violate those protocols by hosting an off-campus event with a large number of attendees. After learning of these events and investigating, the University took prompt action to protect other students, faculty, and staff by suspending Plaintiff. The University afforded Plaintiff a meaningful opportunity to be heard and to explain his side of the situation. The fact that Defendants did not agree with Plaintiff's request for a reduced punishment does not provide Plaintiff with any legal claim.

<u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

- 2 -

relief can be granted, the complaint must first comply with Federal Rule of Civil Procedure 8(a)(2),which states that a complaint "must contain … a short and plain statement" showing that the plaintiff "is entitled to relief" from each named defendant. The Court should accept all of Plaintiff's well-pleaded facts as true and draw reasonable inferences in his favor. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). The complaint must then "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff needed to plead particularized factual content—not conclusory allegations—that allows the Court to plausibly infer that Defendants are liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court can rely on the documents Plaintiff has attached to his Amended Complaint because he refers to those documents and they are central to his claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

With regard to Rule 12(b)(1), to "invoke the jurisdiction of the federal courts," Plaintiff "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Plaintiff "must demonstrate a 'personal stake in the outcome'" and an "[a]bstract injury is not enough." *Id.* (*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)). "[A] plaintiff must demonstrate standing for each form of relief sought." *Kenseth v. Dean Health Plan*, 722 F.3d 869, 890 (7th Cir. 2013). Thus, "[t]o have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as opposed to a threat that is merely conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (cleaned up).

<u>Plaintiff's Allegations</u>

For purposes of Defendants' Rule 12 motion, the Court can treat the following allegations as true.

A.  The University suspended Plaintiff based on his violations of COVID-19 protocols.

In response to the COVID-19 pandemic, Indiana University required students matriculating to the campus for the 2020-2021 academic year to execute a Student Commitment Form, wherein students agreed to practice good personal hygiene, wear a face mask in public, **practice physical distancing and adhere to other guidelines and requirements**. (Doc. 01 at ¶ 73.) (emphasis added) By returning "in-person" to Indiana University's campus for the 2020-2021 academic year, Plaintiff agreed to the Student Commitment Form. (*Id.*) For the 2020-2021 academic year, Plaintiff's fraternity brothers elected Plaintiff to serve as President of their chapter. (*Id.* at ¶ 42.) On February 22, 2021, during Plaintiff's time serving as President, Plaintiff's fraternity chapter at the University received a cease and desist order due to allegations that a fraternity event at an unidentified off-campus facility hosted up to 150 people over a three-day period. (*Id.* at ¶ 79.) The cease and desist order advised the fraternity, through Plaintiff, that no more than fifteen (15) persons may gather in the City of Bloomington at one time. (*Id.* at ¶ 81.)

As of April 7, 2021, Monroe County (home to the University) maintained COVID restrictions advising that gatherings at personal residences within Monroe County would continue to be limited to fifty (50) people. (*Id.* at ¶ 12.) On or about April 23, 2021, Plaintiff and his roommates hosted a fraternity party at their off-campus residence. (*Id.* at ¶¶ 100-102.) Both the Bloomington Police Department and Indiana University Police Department responded to reports of a large party and noise complaint at Plaintiff's residence. (*Id.* at ¶ 105-108.) After the Indiana University Police Department responded to the complaint, Plaintiff and his roommates agreed to keep the noise down and end the party. (*Id.* at ¶

111.) Upon learning of the event, the University investigated Plaintiff's actions and ulti-mately suspended Plaintiff for one year, concluding that Plaintiff's behavior was consid-ered dangerous and disruptive to the university community and constituted a serious threat of harm to himself and others on campus. (*Id.* at ¶ 112.)

Specifically, Plaintiff was suspended for one year because he hosted a fraternity party at his residence with approximately 100 attendees in violation of the COVID restrictions in effect at the time, and despite having received a cease and desist order from the Uni-versity requiring in-person events be limited to no more than 15 persons.  (*Id.* at ¶¶ 3, 79, 81, 100-102, 115.) The University informed Plaintiff's fraternity headquarters of the fra-ternity party Plaintiff held on April 23, 2021 in violation of the cease and desist letter Plaintiff previously received. (*Id.* at ¶¶ 79, 81, 121-22.) Plaintiff's membership in his fra-ternity was suspended, not terminated. (*Id.* at ¶ 122.)

On April 27, 2021, Plaintiff received a letter from Kathy Adams Riester ("Riester") (a named defendant) informing him that he was summarily suspended for a full year. (*Id.* at ¶ 112.) The letter advised Plaintiff that he could request a formal review of the decision within ten days. (*Id.* at ¶ 134.) Plaintiff availed himself of this right, and the hearing was scheduled for April 29, 2021, just two days after Plaintiff was informed of his suspension. (*Id.* at ¶ 136.) The Hearing Commission consisted of three individuals—two faculty mem-bers and one student. (*Id.* at ¶ 138.)

B.  The University holds a Hearing.

At that April 29, 2021 hearing ("Hearing"), Plaintiff appeared and had the opportunity to present information and witnesses.[1] (*Id.* at ¶ 17.) Over the course of the Hearing he

---

[1] In his Amended Complaint, Plaintiff cites to the Code sections setting forth the procedures for appealing a summary suspension. The procedures allow for an appellant to present witnesses at his or her discretion. (Doc. 01 at ¶¶ 60-61.) These procedures are available at https://studentcode.iu.edu/procedures/bloomington/disci-pline/personal-misconduct/action.html. (*Id.* at ¶ 51.)

argued his position and sought relief from the suspension pursuant to the University's Code. (*Id.*) The Commission ultimately found that Plaintiff more likely than not committed the acts for which he was charged under the Code and recommended upholding his suspension. (*Id.* at ¶ 149.)

C.  Plaintiff appeals the Commission's decision.

As provided for by the Code, if a student does not consider the recommendation from the Commission to be acceptable, "he or she may submit a written appeal to the Provost, explaining the reasons for not accepting the recommendation, which may include the length of time of the suspension; the Provost will consider the student's written statement prior to making a final decision." (*Id.* at ¶ 155.)

Plaintiff offers the conclusory allegation that the Hearing—where he presented his story (*Id.* at ¶ 17)—was "simply a sham and offers a student no protections or relief from an inappropriate sanction, in clear violation of due process and the Code" because Plaintiff claims the Commission lacked "authority to modify a summary sanction." (*Id.* at ¶ 147, 208-09.)

The only support Plaintiff alleges to support this legal theory is that the Code, "which allowed for a hearing to determine the appropriateness of the sanction, failed to provide a mechanism by which the hearing commission could overturn or modify overzealous and inappropriate sanctions issued in absence of a hearing." (*Id.* at ¶ 207.) Plaintiff alleges the Hearing violated the United States Constitution and federal statutory law. (*Id.* ¶¶ 182-86; 198-99.)

<u>Argument</u>

Plaintiff has pleaded himself out of Court. He admits that the University gave him notice of the charges and an opportunity to be heard, to call witnesses, and to explain the

circumstances behind his violations of COVID-19 restrictions.

Aside from this central, all-encompassing failure of Plaintiff's legal theories, the Amended Complaint has more particularized failures. Plaintiff has requested relief he has no standing to pursue. And he has named as individual defendants several individuals who had involvement in the University's process, without alleging any facts suggesting that they violated any law, or that they have any power to grant his request to return to campus.

Once informed of Plaintiff's actions violating the University's and local city and county COVID-19 restrictions, the University behaved reasonably under the circumstances. The summary suspension procedure is a necessary and constitutionally-sound option for universities entrusted with protecting the safety of their students. The quickly scheduled Hearing, where the University gave Plaintiff a meaningful opportunity to be heard regarding the charges at issue, complied fully with all requirements of due process. Plaintiff's disagreement with the outcome provides him no legal claim against any Defendant.

I.      Plaintiff's Amended Complaint should be dismissed under Rule 12(b)(6).

Plaintiff has not plausibly pleaded that the University or Defendants violated any law. His Amended Complaint fails to state a claim upon which relief can be granted, so it must be dismissed.

A.  Count I fails to state a claim; the University's actions do not implicate the Due Process clause, but even if they did, Plaintiff received due process.

In Count I, Plaintiff seeks to hold all Defendants liable under 42 U.S.C. § 1983, alleging that Defendants deprived him of his Fourteenth Amendment due process rights. The Fourteenth Amendment to the United States Constitution says the state "shall [not] deprive any person of life, liberty, or property, without due process of law." By its terms,

Defendants would owe Plaintiff due process rights only if they sought to deprive him of life, liberty, or property.

"There are two steps to any procedural due process analysis. First, the court must identify the protected property or liberty interest at stake. Second, it must determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). While some disciplinary decisions made by universities *can* implicate a student's property or liberty interests, under Seventh Circuit precedent, Plaintiff has no cognizable interest to assert in this case.

(1)   *In this circuit, Plaintiff has no cognizable property interest in receiving an education from the University*

As the *Charleston* panel noted, "our circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university" like the University here. *Id.; see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). The Seventh Circuit has repeatedly reaffirmed that conclusion, as a contrary result "would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted." *Charleston*, 741 F.3d at 773 (citing *Williams*, 530 F.3d at 589).

Plaintiff references *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) throughout his Amended Complaint, but the case says no different. It noted that other circuits, like the First, Sixth, and Tenth have come to a different conclusion, *id.* at 659 n.2, but also reaffirmed its previous holdings that "[a] college education—any education—is not 'property' in the usual sense of the word." *Id.* at 659 (*quoting Williams*, 530 F.3d at 589). The *Purdue Univ.* panel agreed with the district court's decision at the Rule 12 stage that the

plaintiff had not pleaded a cognizable property interest. *Id.* at 659–60. Plaintiff's Amended Complaint compels the same finding here. Plaintiff has no property interest that implicates the due process clause.

(2)   *Plaintiff also has no cognizable liberty interest to assert in this case.*

Plaintiff's other option for showing that the due process clause is implicated is to show that the University deprived him of a "liberty interest." Plaintiff's only possible claim on this basis would be to invoke the "stigma plus" test.

The Seventh Circuit has recognized a valid liberty interest where a person's good name, reputation, honor, or integrity is called into question in a manner that makes it virtually impossible for the person to find new employment in their chosen field. *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010). Yet defamation by the government does not deprive a person of a protectable liberty interest, even when it causes serious impairment of one's prospects. *Id.*, 630 F.3d at 534. To avoid constitutionalizing state defamation law, defamation by a government actor does not implicate the due process clause unless "'a right or status previously recognized by state law was distinctly altered or extinguished' as a result." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (*quoting Paul v. Davis*, 424 U.S. 693, 711 (1976)). "To avoid this problem, a plaintiff must allege that '(1) he was stigmatized by the defendant's conduct, (2) *the stigmatizing information was publicly disclosed* and (3) he suffered a *tangible loss of other employment opportunities as a result* of the public disclosure.'" *Abcarian*, 617 F.3d at 941 (*quoting Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)) (emphasis added).

The *Purdue Univ.* panel followed this line of cases. While it found that the plaintiff there ("Purdue John") *did not* have a property interest at stake, he *did* plead a plausible liberty interest for two reasons. First, Purdue had mandated the public disclosure of its

disciplinary determination to the Navy. *Purdue Univ.*, 928 F.3d at 662 ("Purdue, not John, revealed to the Navy that it had found him guilty of sexual violence, and John had a legal obligation to authorize the disclosure. Thus, if what John says is true, the university has stigmatized him by telling the Navy about the guilty finding."). Second, that public disclosure to the Navy altered his legal status in a manner that foreclosed him entering his career of choice. *Id.* at 662–63 ("it was this official determination of guilt, not the preceding charges or any accompanying rumors, that allegedly deprived John of occupational liberty. It caused his expulsion from the Navy ROTC program (with the accompanying loss of scholarship) and foreclosed the possibility of his re-enrollment in it").

Plaintiff's allegations do not meet these "stigma plus" standards for two reasons. Unlike in *Purdue Univ.* where the university effectively mandated disclosure to a specific future employer, the University here has never disclosed, nor compelled Plaintiff to authorize the University to disclose, its disciplinary finding anywhere. This failure alone renders the "stigma plus" doctrine unavailable to Plaintiff. *Abcarian*, 617 F.3d at 941; *cf. Purdue Univ.*, 928 F.3d at 662-63 (doctrine available where Purdue mandated disclosure of its adjudication to plaintiff's chosen career employer, the Navy).

Moreover, even if the University had disclosed its action, mere damage to Plaintiff's reputation via defamation from a government actor is not enough. *Abcarian*, 617 F.3d at 941. Rather, Plaintiff must show that he suffered a tangible loss of employment, or continuing education opportunities, as a result of that public disclosure. Plaintiff has not pleaded that he has lost any tangible opportunities, and potential future harms do not satisfy the "stigma plus" doctrine. *Compare Purdue Univ.*, 928 F.3d at 662 (Purdue John had liberty interest where Purdue's disclosure to Navy terminated his chances to pursue Navy career, and "[h]e does not claim simply that he might someday have to self-publish

the guilty finding to future employers") *with* Doc. 01 at ¶ 172 ("Plaintiff was recently offered full-time employment with a big four accounting firm upon his pre-sanction anticipated graduation in Spring 2022 … as the offer of employment is contingent upon a background investigation, *which will* [future tense]inevitably disclose the disciplinary sanction, it is unclear whether Plaintiff *will have* [future tense] the opportunity for such employment …." (emphasis added)); ¶ 173 ("Plaintiff *will further* [future tense] suffer significant damages as a result of the permanent disciplinary notation and academic records, and the disclosure to all *potential* [future tense] graduate schools, professional examining boards and employers." (emphasis added));  ¶ 180 (Plaintiff's fraternity indefinitely suspended Plaintiff as a member, barring any chance for Plaintiff *to seek* [future tense] employment through his affiliation with the fraternity." (emphasis added)); *see also* SJ Order, *Doe v. Bd. of Trustees of the Univ. of Ill.*, cause no. 17-cv-2180 (C.D. Ill. July 24, 2018), ECF#54 p. 19 (granting summary judgment because "Plaintiff cannot show that Defendant ever publicly disclosed his disciplinary record, and, even more importantly, he admits that he never actually completed and submitted an application to any other school, and that said school rejected him because of his disciplinary record") (*see* DE #35-2).

The foregoing allegations quoted directly from Plaintiff's Amended Complaint illustrate that he has not pleaded the loss of any tangible opportunities, but instead relies exclusively on the mere speculation or possibility that potential future harm may occur in an attempt to satisfy the "stigma plus" doctrine. As the case law explained above demonstrates, that is insufficient in this Circuit, and Plaintiff has failed to plead a cognizable liberty interest. Moreover, with respect to his continuing educational opportunities, Plaintiff can petition for readmission to the University after the period of one year as set forth in the summary suspension letter Plaintiff received, a true and accurate copy of

which is attached as Exhibit A.[2] (Doc. 01 at ¶ 112; Ex. A, p. 2.) As such, he has the opportunity to continue his education at the University, or to otherwise regain good standing at the University upon his successful readmission and pursue his education elsewhere. Thus, just as Plaintiff has no property interest to assert in this case, he also has no cognizable liberty interest. The absence of any interest that implicates the due process clause *alone* means the Amended Complaint must be dismissed. But even if Plaintiff had an interest that implicates the due process clause, his claim still fails; the University's Hearing complied with all due process obligations.

a.   The University never disclosed its disciplinary findings or its summary suspension of Plaintiff to his fraternity.

Plaintiff alleges "the University took part in a conference with a third-party from the Plaintiff's fraternity headquarters, without notice to the Plaintiff, wherein the purported facts of the rushed investigation were discussed, and the University advised the fraternity headquarters of the Plaintiff's summary suspension." (Doc. 01 at ¶ 121.) This allegation apparently relies on an email sent by Plaintiff's fraternity's national headquarters to his chapter's members and executive board that has been misinterpreted. The University did not advise Plaintiff's fraternity that he had been summarily suspended by the University; the University advised Plaintiff's fraternity that Plaintiff and his chapter violated the terms of the previously issued cease and desist letter Plaintiff received from the University. (*Id.* at ¶ 79.)

The Court does not typically consider documentary evidence extrinsic to the challenged pleading in a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Seventh Circuit instructs, however, that a district court  may consider extrinsic exhibits if they are both

---

2 The summary suspension letter is referred to in Plaintiff's pleadings and is central to his claims, inviting the Court to consider the letter at the Rule 12 stage as discussed *infra*.

referred to in the complaint and are also central to the claims. *Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002). To be considered at the 12(b)(6) stage, the documents must be indisputably authentic. *Id.* "The cases therefore allow the defendant to submit the document to the court, and the court to consider it, without need for conversion to Rule 56." *Id.* (collecting cases). Both the cease and desist letter issued by the University to Plaintiff and his chapter and the email sent by Plaintiff's fraternity's national headquarters to chapter members and the executive board are referred to in the Amended Complaint and are central to Plaintiff's claims. Thus, the Defendants have included the cease and desist letter as *Exhibit B* and Plaintiff's fraternity's national headquarters' email as *Exhibit C*.

As alleged in the Amended Complaint, and as explained in Exhibit B, on February 22, 2021, Plaintiff and his fraternity chapter received a cease and desist letter from the University ordering the chapter to immediately cease and desist from hosting events with more than 15 attendees. (Doc. 01 at ¶¶ 79-81; Ex. B p. 2.) After the University learned of the party hosted by Plaintiff and his fraternity the weekend of April 23, 2021, the University notified Plaintiff's fraternity's national headquarters of the fraternity's alleged violation of the cease and desist order. (*Id.* at ¶ 121.) The University did not reveal Plaintiff's summary suspension from the University to the fraternity's national headquarters; the University merely disclosed the allegations that Plaintiff and his fraternity hosted a party the weekend of April 23, 2021. (Ex. C.)

To the extent the sentence "[t]he current Rex; Zachary Binowitz, has been suspended as well based on the recent allegations [brought forth to the Indiana University, office of Fraternity and Sorority Life][3]" in Exhibit C serves as Mr. Binowitz's basis for his belief

---

3 This department is officially named the Office of Sorority and Fraternity Life by the University.

that the University disclosed his summary suspension from the University to his fraternity headquarters, this is incorrect. The sentence refers to Mr. Binowitz's suspension from *membership in his fraternity*, not from the University.  Plaintiff's fraternity's national headquarters sent the email attached as Exhibit C to Plaintiff and his fellow chapter members *before* the University notified Plaintiff of his summary suspension from the University. No one from the University disclosed Plaintiff's summary suspension from the University to his fraternity.

Moreover, this statement about the University's allegations regarding Plaintiff and his fraternity hosting a party in violation of the cease and desist was not defamatory, and is absolutely protected as unambiguously true. *See Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 359 (7th Cir. 2019) (company's statement that employee was suspended in connection with a corruption investigation absolutely privileged as the truth, notwithstanding employee's claim that this true statement implied wrongdoing that he denied). Plaintiff alleges and therefore concedes that he is suspended from the University and that he hosted a party while his fraternity had been ordered to limit in-person gatherings to 15 or fewer people. (Doc. 01 at ¶¶ 79-81, 112.) The University's unambiguously accurate disclosure regarding Plaintiff's conduct to Plaintiff's fraternity's headquarters and that Plaintiff hosted an event with more than 15 people, in violation of the cease and desist order issued to his chapter through Plaintiff as the president, is therefore privileged from any claim of defamation, including any stigma-plus claim. That is the case even if Plaintiff believes he should not have been suspended, and even if he claims that others might draw negative inferences from the unambiguously correct statement that he is on a disciplinary suspension. *Yeatts*, 940 F.3d at 359.

(3)     *Even if Plaintiff had plausibly pleaded a cognizable property or liberty interest, his due process claim fails because the University provided him a meaningful opportunity to be heard.*

Assuming for argument's sake that Plaintiff has a viable interest that implicates the due process clause, the University satisfied all obligations imposed by the Constitution. If Plaintiff could satisfy the first step in the due process analysis, the Court's second inquiry would be "what process is due *under the circumstances*." *Charleston*, 741 F.3d at 772 (emphasis added). The University's process upon learning that Plaintiff violated COVID-19 protocols then in effect—(i) summary suspension, (ii) quickly scheduling a Hearing for Plaintiff, (iii) holding a Hearing during which the University allowed Plaintiff to respond to the disciplinary charges and call witnesses, and (iv) permitting an appeal—was completely reasonable under the circumstances. The University more than satisfied due process requirements.

a.     *Plaintiff's violation of COVID-19 restrictions show that he is a safety threat, which allows the University to summarily suspend him, pending a Hearing.*

Upon learning that Plaintiff hosted a fraternity party in contravention of COVID-19 restrictions then in effect, the University issued a summary suspension letter. Summary deprivations are permissible so long as the state quickly allows the deprived person an opportunity to be heard. *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (summary suspension appropriate response to allegation of horse doping, when followed by hearing on the same); *Medlock v. Trustees of Ind. Univ.*, 738 F.3d 867, 871 (7th Cir. 2013) (due process does not require pre-deprivation hearing for suspension); *Medlock v. Trustees of Ind. Univ.*, No. 1:11-CV-00977-TWP, 2013 WL 1309760, at *6 (S.D. Ind. Mar. 28, 2013), *aff'd*, 738 F.3d 867 (7th Cir. 2013)  ("The Supreme Court has held that a timely post-deprivation hearing after a summary suspension ruling is consistent with due process when an administrator could conclude that a student's 'presence poses a continuing danger to persons or property or

an ongoing threat of disrupting the academic process ...'" (quoting *Goss v. Lopez*, 419 U.S. 565, 582 (1975))).

Plaintiff seems to suggest he did not have enough time to prepare for the Hearing, but provides no explanation for how he was prejudiced, nor does he indicate he requested that the hearing be re-scheduled to allow him additional time to prepare or for any other reason (and in fact, he did not make such a request).[4] He does not allege that there were witnesses he would have called, or other evidence he would have presented. Indeed, it would have been *more* prejudicial to summarily suspend him, but then to elongate the time before he could have a Hearing. Scheduling the Hearing as quickly as possible *minimized* the prejudice to Plaintiff and does not provide Plaintiff with a legal claim.

> b.   *The Hearing itself comported with due process since Plaintiff was given a meaningful opportunity to be heard.*

The due process rights of students facing discipline in an educational setting are not the same as those afforded to defendants in a criminal or quasi-criminal setting, and the University need not adopt criminal procedures to satisfy due process. *See Linwood v. Bd. of Educ. of the City of Peoria*, 463 F.2d 763, 770 (7th Cir. 1972) ("an expulsion hearing need not take the form of a judicial or quasi-judicial trial," and due process in the context of an expulsion hearing "is not to be equated...with that essential to a criminal trial or juvenile court delinquency proceeding"); *see also Foo vs. Ind. Univ.*, 88 F. Supp. 2d 937, 948–49 (1999); *Medlock*, 738 F.3d at 873–74 ("the danger that without the procedural safeguards deemed appropriate in civil and criminal litigation public universities will engage in an orgy of expulsions is slight. The relation of students to universities is, after all, essentially that of customer to seller" (*citing Osteen v. Henley*, 13 F.3d 221, 226 (7th Cir. 1993))).

---

4 Email correspondence between Plaintiff and the University in which he unambiguously consents to the date and time of the Hearing is attached as Exhibit D and can be considered by this Court at the Rule 12 stage for the reasons set forth supra.

All that is required was "some kind of notice" and "some kind of hearing." *See Goss v. Lopez*, 419 U.S. 565, 578 (1975); *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) ("[a]ll that *Goss* required was an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context") (cleaned up); *accord Marshall v. Ind. Univ.*, 170 F. Supp. 3d 1201, 1205–08 (S.D. Ind. 2016). Plaintiff admits he received both.

In short, the Hearing conducted by the University, where Plaintiff was able to respond to the misconduct charges (of which he had notice through his summary suspension letter), characterize his conduct, and put it in the context he deemed proper, unequivocally satisfies all applicable due process strictures, particularly when coupled with Plaintiff's right to appeal the commissioners' decision to then-Provost Robel, who provided yet another layer of process.

      c.     *Plaintiff alleges no operative facts to support the conclusory allegation that the Hearing was a sham.*

To get around the undisputed facts that the University gave him both notice and a Hearing where he presented a statement and argued his case, Plaintiff declares the Hearing "a sham." *See Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016) ("a hearing must be a real one, not a sham or pretense."). Plaintiff's argument that all of the individual defendants were acting in bad faith, and were predetermined to uphold his suspension, should be presumed wrong, and Plaintiff has not alleged sufficiently particularized facts to plausibly rebut that presumption. *Hess*, 839 F.3d at 675 ("we presume that administrators are honest and impartial, and therefore capable of judging a particular controversy fairly on the basis of its own circumstances" (cleaned up)). Plaintiff's characterization of the Hearing as a "sham" is a mere conclusory allegation, which is properly

"excis[ed]" from the Amended Complaint for Rule 12 purposes, *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Plaintiff's Amended Complaint lacks allegations that have helped other litigants overcome a motion to dismiss. For instance, Purdue John alleged that "two of the three panel members candidly admitted that they had not read the investigative report, which suggests that they decided that John was guilty based on the accusation rather than the evidence." *Purdue Univ.*, 928 F.3d at 663. A Dean at Purdue also wrote that she found that the alleged victim ("Purdue Jane") was "a credible witness" and Purdue John "was not a credible witness," *id.* at 658—a "perplexing [conclusion], given that she never talked to Jane. Indeed, Jane did not even submit a statement in her own words to the Advisory Committee." *Id.* at 669. Purdue John also alleged that "the panel members [were] hostil[e] toward John from the start of the brief meeting despite their lack of familiarity with the details of the case." The case also had allegations suggesting that Purdue's Center for Advocacy, Response, and Education—which was also involved in pushing Purdue Jane's allegations along through Purdue's Title IX channels, even though Purdue Jane did not ask them to—issued statements like "Alcohol isn't the cause of campus sexual assault. Men are," a statement that "could be understood to blame men as a class for the problem of campus sexual assault rather than the individuals who commit sexual assault." *Id.*

Plaintiff's allegations must rise above the "plausibility" threshold to survive a motion to dismiss. Plaintiff needed to make some particularized allegation that would plausibly suggest that when the commissioners listened and asked questions at the Hearing, they were simply play-acting rather than attempting to make an objective determination. The Amended Complaint contains no such allegations—no allegations that they refused to review the evidence provided, were instructed or pressured to rule against Plaintiff, nor

that they acted with any hostility toward him.

But further, even under Plaintiff's own allegations, the commissioners would be entitled to find against him on the merits. Plaintiff willingly admitted at the Hearing he engaged in the misconduct of which he was accused, but sought to overturn the University's decision to suspend him for one year. Plaintiff's admissions were more than sufficient to provide a non-arbitrary, rational basis supporting the commissioners' decision. *See McDonald v. Bd. of Trs. of Univ. of Ill.*, 375 F. Supp. 95, 102–03 (N.D. Ill. 1974) (a disciplinarian's findings must be sustained where supported by "some," but not necessarily substantial, evidence), *aff'd and adopted by McDonald v. Bd. of Trs. of Univ. of Ill.*, 503 F.2d 105 (7th Cir. 1974). No doubt, Plaintiff wishes the commissioners and then-Provost Robel had agreed with him and reduced his suspension, but a disagreement over the ultimate outcome does not provide him with any legal claim. *Hess*, 839 F.3d at 678 ("The Fourteenth Amendment is not a vehicle for re-litigating in federal court evidentiary questions arising in school disciplinary proceedings, or for correcting a university's allegedly bad decision-making.").

Plaintiff also alleges his due process rights were violated because the University "failed to provide a mechanism by which an inappropriate sanction could be modified." (Doc. 01 at ¶ 192.) Yet Plaintiff availed himself of the very mechanism he alleges did not exist – after the Commission upheld his suspension, he had a final opportunity to appeal to then-Provost Robel, which included the opportunity request that she reduce the sanction, and he did so. (*Id.* at ¶¶ 154-56, 158.) That then-Provost Robel refused to reduce the sanction does not constitute a violation of Plaintiff's due process rights, meaning Plaintiff's claim fails as a matter of law. *Hess*, 839 F.3d at 678.

II.    Plaintiff lacks standing to even request much of the relief he seeks.

Plaintiff's Amended Complaint seeks prospective injunctive relief, but he cannot show that he has standing for each form of relief he seems. *Kenseth*, 722 F.3d at 890.

A. Plaintiff has no standing to undo the effects of his disciplinary proceeding.

Plaintiff also requests that this Court issue an injunction "to enjoin Indiana University's prohibition against his continued enrollment for no less than one-year …." (Doc. 01 at ¶ 196.)

Purdue John's analogous claims failed for lack of standing. *Purdue Univ.*, 928 F.3d at 666 ("John also seeks to remove the conditions of re-entry imposed by Purdue as part of his discipline. John lacks standing here too. As we already noted, he has not alleged that he intends to return to Purdue—a necessary fact to demonstrate a cognizable injury from the barriers to re-entry.") Indeed, Plaintiff's Amended Complaint repeatedly focuses instead on the impact his suspension has on his *future* educational opportunities. (*E.g.* Doc. 01 at ¶ 20 ("Plaintiff will now be delayed in his education by three semesters, thereby delaying his entry into the workforce, impacting his ability to earn an income, and adversely affecting his *future* educational and career opportunities.") (emphasis added); *Id.* at ¶ 173 ("Plaintiff will further suffer significant damages as a result of the permanent disciplinary notation and academic records, and the disclosure to all *potential* graduate schools, professional examining boards, and employers." (emphasis added)); *Id.* at ¶ 174 ("[T]he vast majority of colleges and universities have *transfer and admission* policies that forbid the acceptance of students who have been suspended or expelled for misconduct." (emphasis added).) Plaintiff has not alleged that he presently intends to return to the University's campus. *Compare Simic*, 851 F.3d at 738 ("To have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of future injury as op-

- 20 -

posed to a threat that is merely conjectural or hypothetical") *with* Doc. 01 at ¶ 196 ("Plaintiff is requesting injunctive relief as he seeks to enjoin Indiana University's prohibition against his continued enrollment for no less than one-year … and the irreparable damage to his *future educational and employment opportunities*…." (emphasis added)). He lacks standing to seek this injunctive relief.

**B.  Plaintiff, at most, has standing to seek expungement of his record.**

Under *Purdue Univ.*, Plaintiff here, at most, has standing to request an expungement of the University's disciplinary finding. 928 F.3d at 666. While he has standing to make the request, his request fails for the other reasons described in this brief.

**III.  Plaintiff's Amended Complaint fails to state any claim against the individual Defendants.**

As explained in § I. above, Plaintiff has no legal claim whatsoever. Even if he did, his attempts to assert liability against the individual Defendants fail to state a claim. When boiled down, Plaintiff's Amended Complaint against all of the individual Defendants is that they did not believe his suspension should be reduced or overturned. But as this Court has previously noted,

> It is the Court's job to determine whether [Plaintiff] received adequate due process under the circumstances, not to review the decision of the university or second-guess the university officials' determination … To do so would open the floodgates of students seeking to use the federal court system as a means of appealing decisions that are properly left to university officials, and which should be resolved through the administrative channels set up by these institutions.

*Medlock*, 2013 WL 1309760, at *6.

**A.  The individual Defendants did not violate Plaintiff's due process rights and cannot be held individually liable.**

Plaintiff makes the conclusory allegation that "Plaintiff also seeks to hold the individual defendants liable in their 'individual capacity' because the individual defendants

knew or had reason to know at the time of Plaintiff's proceeding that their actions violated the Fourteenth Amendment and the University's Code." (Doc. 01 at ¶ 197.) As explained extensively *supra*, Plaintiff received all rights to which he is entitled under the Fourteenth Amendment and thus, cannot state a claim that the individual Defendants violated his rights.

Moreover, Plaintiff includes mere unsupported, conclusory allegations in his attempt to impose liability on the individual Defendants in their individual capacity. (*See, e.g., Id.*; *Id.* at ¶ 194 ("Indiana University, as a public institution established by the State of Indiana, as well as the individual Defendants, as agents of the University and individually, have a duty to provide students with due process of law by and through any and all policies and procedures set forth by the University.")).  For Rule 12 purposes, these conclusory allegations are not considered. Simply put, Plaintiff failed to allege any facts that describe how the individual Defendants personally took action that violated any of Plaintiff's rights. Plaintiff has failed to state a claim against the individual Defendants in their individual capacity.

## B.  The only act Plaintiff alleges Adams-Riester took is expressly permitted by binding precedent.

Other than noting her position at the University and believed state and county of residence, the only allegation made against Defendant Adams-Riester is that she sent Plaintiff the April 27, 2021 summary suspension letter. (Doc. 01 at ¶ 112.) Plaintiff concedes that this letter was sent based on the University's belief that his behavior was "considered dangerous and disruptive to the university community and constituted a serious threat of harm to himself and others on campus." (*Id.*)

Under Seventh Circuit precedent, Adams-Riester was permitted to treat the Univer-

sity Police Department report as "compelling evidence" that Plaintiff may have committed the act, which justified Plaintiff's "prompt[] remov[al] from campus pending a later hearing." *Hess*, 839 F.3d at 674. Adams-Riester had no involvement in that later hearing. Since the only action Plaintiff alleges Adams-Riester took is expressly permitted under *Hess*, the Amended Complaint fails to state a claim against her.

C.  Then-Provost Robel did not violate the Constitution by disbelieving Plaintiff's story.

Plaintiff's only allegation regarding actions taken by then-Provost Robel is that she denied Plaintiff's appeal. (Doc. 01 at ¶ 163.) Plaintiff further argues that then-Provost Robel failed to appreciate the fact that on the day she denied Plaintiff's appeal, the Monroe County Health Department, the City of Bloomington, and the University lifted all previous COVID-19 restrictions.[5] (*Id.* at ¶ 164.) Plaintiff does not allege that then-Provost Robel withheld evidence or had input into the design of the University's procedures used here.

Plaintiff does not have a constitutional right to have then-Provost Robel believe Plaintiff's suggestion that his punishment be reduced. *Hess*, 839 F.3d at 678. The Amended Complaint does not state a claim against then-Provost Robel.

IV.  Even if Plaintiff had any viable claim, and if he had standing to request it, his claims are still barred.

Even if Plaintiff had asserted a cognizable claim (§ I above), or had standing to seek the prospective relief he requests (§ II above), or had asserted any claim against the individual Defendants (§ III above), most if not all of his Amended Complaint should still be dismissed based on the following applicable immunities.

---

5 Plaintiff apparently believes that, because COVID-19 restrictions were lessened after Plaintiff had acted in violation of restrictions then in effect, the University should have considered the lessened restrictions after Plaintiff appealed his suspension. This is irrelevant because, as explained in this brief, Plaintiff's actions violated the COVID-19 restrictions in effect at that time.

A. The University and its officials cannot be subjected to a § 1983 suit.

Section 1983 provides a cause of action only against a "person." 42 U.S.C. § 1983 ("Every person …") The United States Supreme Court has held that neither a State nor its officials acting in their official capacities are a "person" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Therefore, Plaintiff cannot bring his § 1983 claim against the University or against the other Defendants in their official capacities.

B. The individual Defendants are entitled to qualified immunity because Plaintiff's claimed right is not clearly articulated in case law.

Plaintiff's claims against all individual Defendants must be dismissed because they are entitled to qualified immunity. Plaintiffs in a § 1983 case can recover damages only if Defendants violated a clearly established right. *See Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). Plaintiff claims that Defendants knew they were violating a clearly established right based on *Purdue Univ.*, 928 F.3d at 652. Plaintiff reads *Purdue Univ.* and the Constitution to say Plaintiff has a constitutionally protected liberty interest "in his right to continued enrollment at Indiana University," (Doc. 01 at ¶¶ 223, 225), but the case went out of its way to *not* say that.

*Purdue Univ.* said that Purdue John had suffered an attack on his "occupational liberty" because Purdue mandated disclosure of its disciplinary finding to the Navy, Purdue John's career of choice, thereby making it impossible for him to continue his Navy career. Plaintiff makes no analogous allegation in his Amended Complaint.[6] Indeed, the allegations Plaintiff provides were expressly found by the Seventh Circuit to *not* be sufficient

---

[6] Plaintiff appears to allege the disclosure of his disciplinary proceedings to his fraternity implicate a liberty interest, but this allegation fails based on Plaintiff's own allegations: Plaintiff's career of choice is plainly the job with the big four accounting firm he was offered, which has not been revoked. Plaintiff's attempt to characterize his suspension as affecting his opportunity to work for his fraternity is empty, as Plaintiff has not alleged he has pursued, or even considered seeking, employment with his fraternity.

to adequately plead a "liberty interest." *Compare Purdue Univ.*, 928 F.3d at 662 ("He does not claim simply that he might someday have to self-publish the guilty finding to future employers") *with* Doc. 01 at ¶ 172 ("Plaintiff was recently offered full-time employment with a big four accounting firm upon his pre-sanction anticipated graduation in Spring 2022 … as the offer of employment is contingent upon a background investigation, *which will* [future tense]inevitably disclose the disciplinary sanction, it is unclear whether Plaintiff *will have* [future tense] the opportunity for such employment …." (emphasis added)); ¶ 173 ("Plaintiff *will further* [future tense] suffer significant damages as a result of the permanent disciplinary notation and academic records, and the disclosure  to all *potential* [future tense] graduate schools, professional examining boards and employers." (emphasis added));  ¶ 180 (Plaintiff's fraternity indefinitely suspended Plaintiff as a member, barring any chance for Plaintiff *to seek* [future tense] employment through his affiliation with the fraternity." (emphasis added)). Plaintiff's Amended Complaint alleges only that "he might someday have to self-publish" the University's disciplinary finding to his future employers, which *Purdue Univ.* reconfirmed was not sufficient to plead a "liberty interest." Plaintiff's opportunity to pursue his career of choice has not been affected, as Purdue  John's was.

On this "liberty interest" issue, Plaintiff is requesting a substantial extension (if not outright departure) from legal precedent in this circuit. Since the rights Plaintiff claims are not "clearly established," Plaintiff's § 1983 claim against the individual Defendants can be dismissed now. *Purdue Univ.*, 928 F.3d at 665 ("it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law"); *Bissessur*, 2008 WL 4274451, at *3 ("the issue of qualified immunity is to be resolved at an early stage in a litigation").

<u>Conclusion</u>

Plaintiff has not pleaded a Due Process violation, nor any other violation of law. He lacks standing to even ask for most of his requests. When analyzed on a defendant-by-defendant basis, his claims fare even worse, and are barred by several layers of legal immunity. Plaintiff's Amended Complaint should be dismissed.

Respectfully submitted,

<u>/s/ Tracy Betz</u>
Tracy Betz, Atty. No. 24800-53
Kayla Moody-Grant, Atty. No.35801-49
Jeffrey W. Parker, Jr., Atty. No. 35742-49
Taft Stettinius & Hollister, LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
tbetz@taftlaw.com
kmoody-grant@taftlaw.com
jparker@taftlaw.com

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was filed via the Court's electronic filing system on January 18, 2022, which will provide service upon all counsel of record.

<u>/s/ Tracy N. Betz</u>